H. MICHAEL LEWIS v. SALEM ACADEMY AND COLLEGE, JOHN H. CHANDLER, Individually and as President of Salem College, and SALEM ACADEMY AND COLLEGE BOARD OF TRUSTEES

No. 7421SC623

(Filed 2 October 1974)

1. Colleges and Universities; Contracts § 25— college professor — employment contract — continuation after age 65 discretionary

Plaintiff's complaint failed to state a claim upon which relief could be granted where plaintiff alleged that he worked for the college under a series of one-year contracts which provided that normal retirement came at age 65, that employment beyond that age was possible but that possibility existed only upon recommendation of the administration and at the discretion of the Board of Trustees, plaintiff's employment was continued on a year-to-year basis for two years after plaintiff turned 65, the express language of the controlling documents disclosed by plaintiff's complaint established that further continuation of his employment remained in the discretion of the Board of Trustees and the Trustees did not exercise that discretion to offer plaintiff a job for the three years remaining before he turned 70.

2. Contracts § 12; Customs and Usages— construction of employment contract — custom or usage explained

A custom or usage may be proved in explanation and qualification of the terms of a contract which otherwise would be ambiguous, or to show that the words in which the contract is expressed are used in a particular sense different from that which they usually import, and, in some cases, to annex incidents to the contract in matters upon which it is silent, but evidence of a usage or custom is never admitted to make a new contract or to add a new element to one previously made; therefore, plaintiff's contention that his forced retirement prior to age 70 contravened the "common law" of defendant college was without merit, since specific paper writings set out in clear and unambiguous language the conditions under which his employment after age 65 could be continued.

APPEAL by plaintiff from *McConnell, Judge,* 11 March 1974 Session of Superior Court held in FORSYTH County.

From 1950 until 30 June 1973 plaintiff was a professor at Salem College. The College did not renew his employment after the close of the 1972-1973 academic year. Contending he has the right to continue teaching for three additional years until he becomes 70, he brought this action to recover salary and other benefits to accrue during the three-year period.

Lewis v. College

In his complaint, filed 5 February 1974, plaintiff in substance alleged:

He was employed as a professor at Salem College in the fall of 1950 and thereafter for successive years under a series of one-year contracts. Prior to the 1971-1972 academic year he reached age 65. The 1971-1972 Faculty Guide of Salem College, incorporated by reference in all appointment contracts and a copy of which was attached as an exhibit to the complaint, contained the following:

"Normal RETIREMENT of faculty and administrative personnel comes at the close of the academic year in which a person reaches age 65. If age 65 is reached in the summer months prior to September 1, retirement is considered to have been reached at that time.

"Continuation of service beyond age 65 is possible until age 70 upon request of the individual and recommendation of the administration, and at the discretion of the Board of Trustees. When service is extended it is on a year-to-year basis by action of the Board of Trustees. Any faculty member continuing beyond age 68 is automatically relieved of administrative responsibilities, such as Head of Department."

Prior to his 65th birthday, plaintiff notified the then President of the College that he wished to continue to teach until age 70. The College in turn offered plaintiff an appointment contract for the 1971-1972 school year similar to previous appointment contracts. This contract, a copy of which was attached as an exhibit to the complaint, contains the following:

"SALEM ACADEMY AND COLLEGE
Winston-Salem, North Carolina

APPOINTMENT CONTRACT AND COMPENSATION

SUMMARY
For 1971-1972

Name:   H. Michael Lewis

Rank:   Prof. and Head, Dept. of Modern
        Languages

Tenure: Continuous

> This statement of appointment is made with the approval of the Board of Trustees. When it has been signed in duplicate by the appointee and one copy has been returned to the President, it constitutes a contract. In addition to the base salary and fringe compensatory benefits listed below, this agreement is understood by both parties to include policies on academic freedom and tenure, retirement, sabatical leaves, sick leaves and other privileges and responsibilities as legislated by the Board of Trustees as well as regulations and policies adopted by the faculty and/or required by the administration for proper functioning of the college. These matters are published annually in the faculty guide and are made available to faculty and administrative employees."

(This contract then contains a detailed statement as to base salary and other employment benefits. It was signed on 2 April 1971 in the name of the College by its President and contains the signed acceptance of the plaintiff.)

The continuation of employment of a faculty member until age 70 was a usual and customary practice of Salem College, and the right to continued employment until age 70 became an implied part of the benefits and considerations offered by Salem College to induce teachers to accept employment and remain at Salem College. During the academic year 1971-1972 a change occurred in the administration of Salem College and a new President was installed. On 14 January 1972 the new President announced by letter a new administrative interpretation of Salem's retirement policy. Pursuant to this new interpretation, plaintiff was forced to retire at the end of the 1972-1973 academic year. Plaintiff's forced early retirement was based solely on the fact that he was over 65 years old, and his mandatory retirement prior to age 70 was "contrary to the assurances and representations of the previous administration, in contravention of the 'common law' of Salem College, and in direct violation of the contract between the College and the Plaintiff that provided for Plaintiff's continued employment until age 70, and in direct violation of the 1971-1972 Faculty Guide provisions as of the date of the contract of forced retirement."

Also attached to the complaint as exhibits were copies of the letter dated 14 January 1972 from the new President ad-

dressed to all members of the faculty, the 1972-1973 Faculty Guide, and the final appointment contract dated 31 March 1972 between plaintiff and the College covering his employment for the 1972-1973 year. This last document was signed by plaintiff, contains after the word "Tenure" the words: "Retirement scheduled for June 30, 1973," and contains the sentence:

> "In view of the retirement schedule, this will be the final regular full-time contract, as per regulations and policies published in the Faculty Guide and elsewhere."

Other allegations in the complaint will be referred to in the opinion.

Defendants moved under Rule 12(b)(6) to dismiss the complaint for failure to state a claim upon which relief can be granted. The motion was allowed, and plaintiff appealed.

*Meyressa H. Schoonmaker, William G. Pfefferkorn, Charles O. Peed, and M. Beirne Minor for plaintiff appellant.*

*Womble, Carlyle, Sandridge & Rice by Charles F. Vance, Jr. and W. Andrew Copenhaver for defendant appellee.*

PARKER, Judge.

Rule 12(b)(6) of the North Carolina Rules of Civil Procedure is identical to Rule 12(b)(6) of the Federal Rules. It is appropriate, therefore, to turn to decisions under the Federal Rule 12(b)(6) for guidance in applying our own. In this regard, the author of Moore's Federal Practice summarizes federal decisions as follows:

> "The motion to dismiss under Rule 12(b)(6) performs substantially the same function as the old common law general demurrer. A motion to dismiss is the usual and proper method of testing the legal sufficiency of the complaint. For the purposes of the motion, the well-pleaded material allegations of the complaint are taken as admitted; but conclusions of law or unwarranted deductions of fact are not admitted.

> " 'A [complaint] may be dismissed on motion if clearly without any merit; and this want of merit may consist in

an absence of law to support a claim of the sort made, or of facts sufficient to make a good claim, or in the disclosure of some fact which will necessarily defeat the claim.' But a complaint should not be dismissed for insufficiency *unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim.* Pleadings are to be liberally construed." 2A Moore's Federal Practice, 2d Ed., § 12.08.

Applying these principles to the complaint in the present case, we agree with the trial court that plaintiff failed to state a claim upon which relief can be granted.

[1] Plaintiff's complaint, with its attached exhibits, sets forth in considerable detail the transactions and occurrences which he intends to prove to show that he is entitled to relief. It is, therefore, amply sufficient to give the court and the parties notice of these as required by Rule 8(a)(1). Should he prove them all, however, he would fail to show any basis upon which relief against defendants can be granted. Indeed, he would show exactly to the contrary, that there is no basis upon which he is entitled to relief. Thus, the difficulty with plaintiff's complaint is not that it fails to give notice with sufficient particularity of the transactions intended to be proved, but that as a matter of substantive law such transactions do not give rise to any claim upon which relief can be granted.

Plaintiff alleged that throughout the entire time of his employment by defendant College he worked under a series of one-year contracts. Two of these, the contract for 1971-1972 and the contract for 1972-1973, were attached as exhibits to his complaint. He alleged, and examination of these exhibits confirms, that the Faculty Guide of Salem College was incorporated by reference into all appointment contracts. A copy of that Guide was also attached as an exhibit to the complaint. He alleged that "from 1950 until September 7, 1973, the retirement provisions of the Faculty Guide remained the same. . . . " Thus, his allegations and exhibits establish that throughout the entire period of his service at the College he was employed under written contracts which provided that "normal retirement" came at age 65, that employment beyond that age was "possible," but that this possibility existed only upon "recommendation of the administration, and at the discretion of the

Lewis v. College

Board of Trustees," and that "[w]hen service is extended it is on a year-to-year basis by action of the Board of Trustees." It is difficult to see how language could be more explicit.

Under these provisions plaintiff's employment was in fact continued after he became 65. In conformity with the Faculty Guide, this continuation was on a year-to-year basis. This was done under two successive written contracts, each of which was accepted and signed by plaintiff. Each of these recited that it was "made with the approval of the Board of Trustees." The second of these, covering plaintiff's employment for 1972-1973, contains the statement: "Retirement scheduled for June 30, 1973," and the further statement that "[i]n view of retirement schedule, this will be the final regular full-time contract, as per regulations and policies published in the Faculty Guide and elsewhere." Thus, the express language of the controlling documents disclosed by plaintiff's complaint establishes that further continuation of his employment remained in the discretion of the Board of Trustees and that he has no right to relief because the Trustees did not exercise that discretion in the manner which he desired.

In paragraph VI of the complaint, plaintiff refers to the word "continuous" which appears after the word "tenure" in his appointment contract for 1971-1972, and alleges that "this offer of continuous employment, made after Plaintiff's 65th birthday, was to be in effect until Plaintiff reached age 70 subject to termination for cause only." That the single word, "continuous," in the context in which it appears, amounted to an offer of continuous employment on any terms or for any period beyond that expressly covered by the document in which the word appeared, is an unwarranted conclusion drawn by plaintiff. Such a conclusion is not taken as admitted in considering defendants' 12(b)(6) motion. To construct from the single word "continuous," as that word appears in the 1971-1972 appointment contract, an offer, acceptance, and binding five-year contract as plaintiff contends, requires construction of a much bigger building than can be successfully accomplished with one small brick.

[2]  Other portions of the complaint also contain allegations which, in our view, amount to no more than plaintiff's own unwarranted deductions or conclusions of law and which fail

to serve as a basis upon which any relief can be granted. These include allegations concerning the "usual and customary practice" of Salem College to allow a faculty member to teach, upon his request, until age 70, provided he was competent and capable of discharging his duties. From this, plaintiff arrives at what he refers to as the "common law" of Salem College, and alleges that his forced retirement prior to becoming 70 was in contravention of that "common law" and in violation of implied provisions of his contract. In some contexts courts have found it useful to speak in terms of "the common law of a particular industry or a particular plant," *United Steelworkers v. Warrior and G. Nav. Co.,* 363 U.S. 574, 4 L.Ed. 2d 1409, 80 S.Ct. 1347 (1960). For example, such a "common law" has been deemed to exist as a supplement to an industrial collective bargaining agreement covering many employees in a wide variety of situations about which the contract was generally silent. Here, however, plaintiff had his own individual written contracts of employment, and the Faculty Guide, which was expressly incorporated into each of these contracts, specifically covered in clear and unambiguous language the conditions under which his employment after age 65 might be continued. "A custom or usage may be proved in explanation and qualification of the terms of a contract which otherwise would be ambiguous, or to show that the words in which the contract is expressed are used in a particular sense different from that which they usually import, and, in some cases, to annex incidents to the contract in matters upon which it is silent; but evidence of a usage or custom is never admitted to make a new contract or to add a new element to one previously made." 55 Am. Jur., Usages and Customs, § 31, p. 292.

Plaintiff's allegations that he declined other employment and arranged his affairs in reliance upon his expectations that he would continue to teach until age 70 at Salem College likewise create no basis for imposing a legal obligation upon the college in direct contradiction to the rights which it clearly retained under the written contract between the parties. Nor do we find any legal basis upon which to support a claim for relief in plaintiff's conclusory allegations that denial of his continued employment would be "unconscionable" and "would result in the defendant being unjustly enriched."

The judgment allowing defendants' motion and dismissing plaintiff's action is

Affirmed.

Judges CAMPBELL and VAUGHN concur.