PIEDMONT TRIAD REGIONAL WATER AUTHORITY, PLAINTIFF v. JOHN LEON LAMB, AND WIFE, HAZEL RUTH LAMB, KRISTLE L. MARSH HYATT (FORMERLY KRISTLE L. MARSH), JIMMY C. HYATT, JR. AND NORTH CENTRAL FARM CREDIT, ACA, DEFENDANTS

No. COA01-970

(Filed 4 June 2002)

**1. Eminent Domain— damages—equipment taken with property**

The trial court did not err in a condemnation proceeding by allowing defendants' witnesses to include equipment in their determination of the value of the property taken where the complaint and declaration of taking stated that defendants would not be permitted to remove buildings or fixtures situated on the property; defendants' witnesses testified that the equipment in question was part of and typically sold with chicken houses which were included in the taking; there was no request for instructions regarding whether this equipment was included in the definition of property; and there was no objection to the trial court's instructions that the jury was to determine whether the equipment was included within the definition of property.

**2. Trials— verdict—average of four valuations—evidence of compromise insufficient**

The trial court did not err by denying defendant's motion for a new trial where plaintiff alleged that the jury reached a compromise or quotient verdict, but the only indication of an unlawful verdict was that the jury's dollar amount approximated the average of the valuations presented by the four experts.

Appeal by plaintiff from judgment entered 26 February 2001 and order entered 9 March 2001 by Judge Thomas W. Seay, Jr. in Randolph County Superior Court. Heard in the Court of Appeals 24 April 2002.

*Roberson Haworth & Reese, PLLC, by Robert A. Brinson and Christopher C. Finan, for plaintiff-appellant.*

*Wyatt Early Harris Wheeler, L.L.P., by Scott F. Wyatt, for defendants-appellees.*

WALKER, Judge.

On 25 May 1999, plaintiff, a public authority with the power of eminent domain, served official notice on defendants that it intended to institute condemnation proceedings to acquire a tract of land owned by defendants to construct the Randleman Lake Project. On 20 July 1999, plaintiff filed its complaint and declaration of taking which alleged the following in part:

3. . . . . [T]he Plaintiff, Piedmont Triad Regional Water Authority, has determined that it is necessary and in the public interest to acquire by condemnation the real property interest described in Exhibit A for the public use and purpose set forth in Exhibit B.

. . .

11. The property and area described in Exhibit A, Paragraphs 2-3, are hereby DECLARED TO BE TAKEN and condemned, and title thereto, together with the right of possession, shall vest in the plaintiff according to the provisions of N.C.G.S. § 40A-42. Right of entry shall vest with the Plaintiff with the placing of the deposit set forth herein in accordance with N.C.G.S. § 40A-42.

12. The owners will not be permitted to remove any timber, buildings, structures, permanent improvements or fixtures situated on or affixed to the property.

Defendants filed an answer asserting they lacked sufficient information regarding the accuracy of the descriptions of the property described in Exhibit A.

Located on defendants' property were two chicken houses which had not been used since 1995, along with various pieces of equipment situated in and around the chicken houses. This equipment included

feed silos, mist cooling systems, egg conveyor systems, drinkers, automatic chicken feeders and egg laying nests.

After a jury trial, the only issue for the jury to determine was just compensation for the taking. Defendants offered the testimonies of Edmund Lindsey Dean and Geoffrey Greg, two experts in the field of real estate appraisals. Both Mr. Dean and Mr. Greg considered the items of equipment as part of the improvements to the property in making their appraisals. Mr. Dean valued the property taken at $222,625, while Mr. Greg valued it at $252,900.

Plaintiff offered the testimonies of Roy Neal Moore and Howard Williams, two experts in the field of real estate appraisals. Neither of plaintiff's experts included the equipment in the valuation of the property. Mr. Moore valued the property taken at $87,300, while Mr. Williams valued it at $75,500. The jury found just compensation for the taking of the property to be $158,500. Plaintiff moved for a new trial pursuant to N.C. Gen. Stat. § 1A-1, Rules 59(a)(5), (6) and (7) (2001) which was denied.

**[1]** Plaintiff first contends that the trial court erred in admitting testimony regarding the value of the equipment located on the property. Plaintiff claims that N.C. Gen. Stat. § 40A-2(7) limits property which is subject to taking to real property. Thus, plaintiff claims that since the equipment is personal property, it is not subject to taking and evidence of its value is inadmissible.

The admissibility of evidence is within the sound discretion of the trial court and will not be overturned on appeal absent an abuse of discretion. *Lane v. R.N. Rouse & Co.*, 135 N.C. App. 494, 498, 521 S.E.2d 137, 140 (1999), *disc. rev. denied*, 351 N.C. 357, 542 S.E.2d 212 (2000).

Under N.C. Gen. Stat. § 40A-2(7), property is defined as "any right, title, or interest in land, including leases and options to buy or sell. 'Property' also includes rights of access, rights-of-way, easements, water rights, air rights, and any other privilege or appurtenance in or to the possession, use, and enjoyment of land." Plaintiff relies on the recent case from this Court, *City of Durham v. Woo*, 129 N.C. App. 183, 497 S.E.2d 457, *cert. denied*, 348 N.C. 496, 510 S.E.2d 380 (1998), for the proposition that equipment is not subject to taking. However, in *Woo*, this Court relied on the fact that the City gave notice to the owners that the equipment was not part of the taking and it specifically gave the owners an opportunity to remove the

equipment. *Woo*, 129 N.C. App. at 191, 497 S.E.2d at 462-63. This Court reversed the award for the taking of "fixtures and personal property." *Id.* The Court noted that "the City specified that it was condemning defendants' real property, excluding the restaurant and kitchen equipment, and allowed defendants approximately four months to remove such equipment. Because defendants never removed those items despite the opportunity to do so, those items are deemed to have been abandoned." *Id.* at 191, 497 S.E.2d at 462. Thus, the value of the fixtures and personal property was not to be included in the value of the taking. *Id.*

To the contrary, in this case, the complaint and declaration of taking in paragraph twelve alleged that defendants "will **not** be permitted to remove any timber, buildings, structures, permanent improvements or fixtures situated on or affixed to the property." (Emphasis added). Defendants only answered that they lacked sufficient information regarding the accuracy of the description of the property taken. We find nothing in the complaint nor in the record which indicated what property defendants were entitled to remove. Defendants' witnesses testified that these items of equipment were part of and typically sold with the chicken houses, which plaintiff admitted were included in the taking.

Furthermore, the trial court gave instructions on the amount of just compensation due defendants for the taking of "property." There was no request for instructions regarding whether this equipment was included in the definition of "property." There was no objection by plaintiff to the trial court's jury instructions. The jury was to determine whether the equipment was included within the definition of "property." Since the record does not indicate that plaintiff ever excluded it from the taking, we conclude the trial court did not abuse its discretion in allowing defendants' witnesses to include the equipment in their determination of the value of the property taken.

**[2]** Plaintiff further contends the trial court erred in denying its motion for a new trial because the jury reached an unlawful compromise or quotient verdict. "A compromise verdict is one in which the jury answers the issues without regard to the pleadings, evidence, contentions of the parties or instructions of the court." *City of Burlington v. Staley*, 77 N.C. App. 175, 178-79, 334 S.E.2d 446, 450 (1985) (*citing Vandiford v. Vandiford*, 215 N.C. 461, 2 S.E.2d 364 (1939)). "It is the well-established law of North Carolina that no quotient verdict exists unless the jurors reach a prior agreement to be

bound by the average of the amount each submits as damages." *Seaman v. McQueen*, 51 N.C. App. 500, 506, 277 S.E.2d 118, 121 (1981); *see also Gram v. Davis*, 128 N.C. App. 484, 490, 495 S.E.2d 384, 388 (1998). The dollar amount of the verdict alone is insufficient to set aside the verdict as being either an unlawful compromise or a quotient verdict. *Staley*, 77 N.C. App. at 179, 334 S.E.2d at 450; *Gram*, 128 N.C. App. at 490, 495 S.E.2d at 388.

Here, the only indication of an unlawful compromise or a quotient verdict was that the jury's dollar amount for just compensation approximated the average of the valuations presented by the four experts. There is nothing else in the record to show that the jury had a "prior agreement" to be bound by any averages nor is there any showing that the jury acted without regard to the pleadings, evidence, contentions of the parties, or instructions of the trial court. As instructed, the jury was free to believe all, part, or none of a witness's testimony as to the value of the taking. Because plaintiff has failed to establish that the jury's verdict was an unlawful compromise or quotient verdict, we find the trial court did not err in denying plaintiff's motion for a new trial.

In conclusion, the trial court did not abuse its discretion in allowing defendants' experts to testify regarding the value of the plaintiff's taking. The trial court did not err in denying plaintiff's motion for a new trial.

No error.

Judges McGEE and CAMPBELL concur.